# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA    CRIMINAL ACTION NO. 10-00143

VERSUS          JUDGE S. MAURICE HICKS, JR.

GEORGE GRACE

## MEMORANDUM RULING

Petitioner George Grace ("Grace") is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 344) and an Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 348). For the reasons set forth below, the motions are **DENIED.**

## BACKGROUND

These proceedings began in 2010, when Grace was originally indicted on eleven counts. See Record Document 1. In 2011, the Government filed a Superseding Indictment (the "Indictment") (Record Document 24), which included 13 counts. Grace was charged with racketeering, bribery, obstruction of justice, fraud, extortion, making false statements to the FBI, and use of an interstate facility in aid of racketeering. These charges stemmed from Grace's corrupt conduct during his tenure as the mayor of the City of St. Gabriel, Louisiana. A lengthy trial began on January 23, 2012. Following closing arguments, the Court charged the jury. Grace did not object to the Court's jury instructions. See Record Document 281-3 at 299.

The jury returned a guilty verdict on seven counts: Count 1 (RICO), Count 6 (obstruction of justice), Count 7 (false statements), Count 8 (federal program bribery), Count 9 (mail fraud), Count 11 (wire fraud), and Count 13 (use of an interstate facility in aid of racketeering). The Court then sentenced Grace to 264 months imprisonment. See Record Document 268.

Grace timely appealed several aspects of his conviction and sentence to the Fifth Circuit. The Fifth Circuit rejected all of Grace's arguments regarding his conviction. It did, however, vacate the Court's sentence and remand for re-sentencing, such that this Court could recalculate the appropriate loss amount. See United States v. Grace, 568 Fed. Appx. 344 (5th Cir. 2014). The Court re-sentenced Grace, again to 264 months imprisonment. See Record Document 324. Grace now seeks to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 on multiple grounds. The Court analyzes each of Grace's claims below.

## LAW AND ANALYSIS

### I) § 2255 Standard

28 U.S.C. § 2255(a) provides a prisoner four grounds upon which he may seek relief from his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the Untied States;" (2) "that the court was without jurisdiction to impose such a sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence is "otherwise subject to collateral attack." If a court finds that any of the four grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U. S. C. § 2255(b). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995).

"A claim not raised on direct appeal is considered procedurally defaulted and will be considered on collateral review only if the defendant can show either (1) 'cause' for his failure to previously raise the issue and 'actual prejudice' resulting from the alleged

error or "actual innocence.'" <u>Bousley v. United States</u>, 523 U.S. 614 (1998). "To establish "cause," a prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" <u>Roach v. Angelone</u>, 176 F.3d 210, 222 (4th Cir.1999) (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991)).

## II)    ANALYSIS

### a.  <u>McDonnell v. United States</u>

Grace's first series of arguments relies on the United States Supreme Court case of <u>McDonnell v. United States</u>, 136 S.Ct. 2355 (2016) ("<u>McDonnell</u>"). He argues that as a result of <u>McDonnell</u>, his convictions must be vacated. In <u>McDonnell</u>, the Supreme Court held that a district court's instruction on the term "official act," as used in 18 U.S.C. § 201(a)(3), was overbroad. The Court interpreted official act in the following way:

> [A]n "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) - without more - does not fit that definition of "official act."

<u>McDonnell</u>, 136 S. Ct. at 2371–72 (2016). Because the jury instructions used at McDonnell's trial included a broader interpretation, his convictions were vacated. Here, it

is necessary to determine which, if any, of the counts on which Grace was convicted are affected by McDonnell. At the outset, the Court notes that McDonnell potentially affects Counts 1, 8, 9, 11 and 13. Each count will be addressed in turn.

### i. Count 1

Count 1 charged Grace with a violation of 18 U.S.C. § 1962(c) - the RICO statute ("RICO"). To find a defendant guilty under RICO, a jury must find, inter alia, proof beyond a reasonable doubt of the commission of at least two racketeering acts. See United States v. Turkette, 452 U.S. 576 (1981). Here, the Indictment lists eleven racketeering acts. Six of the listed racketeering acts were public bribery in violation of Title 14, Louisiana Revised Statute, Section 118. Four of the listed acts were extortion in violation of Title 18, United States Code, Section 1951. These four acts of extortion were also charged as separate crimes in Counts 2-5 of the Indictment. The remaining racketeering act was obstruction of justice in violation of Title 18, United States Code, Section 1512(b)(3). Obstruction of justice was also charged as a separate crime in Count 6 of the Indictment. Of these eleven racketeering acts, only the four acts of extortion could have been affected by McDonnell.[1]

As is mentioned above, the four racketeering acts of extortion were charged as separate crimes in Counts 2-5 of the Indictment. However, the jury returned verdicts of not guilty on each of those counts.[2] The Court takes this to mean that the acts of extortion also did not form the basis of the jury's conclusion that Grace violated RICO. As such, the Court concludes that McDonnell has no effect on Grace's conviction on Count 1.

[1] Obstruction of justice clearly has no official act requirement. For the Court's discussion on why it concludes that McDonnell does not apply to the acts of bribery under Louisiana law, see infra at pp. 8-10.
[2] Notably, the jury did find Grace guilty on the separately charged obstruction of justice count (Count 6).

### ii.  Count 8

Count 8 charged Grace with a violation of Title 18, United States Code, Section 666 – federal program bribery. This statute makes it a crime for an agent of a state or local government or agency receiving certain federal benefits to solicit, accept, or agree to accept a bribe in connection with certain business or transactions of the local government. See 18 U.S.C §666(B). It is not clear to the Court whether McDonnell has any effect on this statute, as on its face, there is no official act requirement. However, the Court need not decide whether it applies. Even assuming, arguendo, that McDonnell applies to Count 8, Grace's claim is procedurally defaulted, as he failed to raise the claim on direct review. See Bousley v. United States, 523 U.S. 614 (1998).

As is noted above, where a claim is procedurally defaulted, "the claim may be raised in a habeas proceeding only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" Id. at 622. Here, Grace has failed to demonstrate cause or actual innocence. First, Grace has failed to show that the legal basis for his claim was not reasonably available to counsel at the time of direct review. See Reed v. Ross, 468 U.S. 1 (1984) (holding that where a claim is so novel that its legal basis is not reasonably available to counsel on appeal, a petitioner has cause for the failure to raise the claim on direct review). It is clear that the basis for the Supreme Court's decision was reasonably available at the time of Grace's appeal.

In Valdes v. United States, the United States Court of Appeals for the D.C. Circuit rejected a proposed interpretation of the term official act as used in 18 U.S.C. § 201 as overly broad. 475 F.3d 1319, 1323 (D.C. Cir. 2007). In so doing, the court relied on the canon of *noscitur a sociis* to narrowly interpret the terms "question" and "matter," which are found in the statutory definition of official act. See id. at 1324. This was the same

approach used by the U.S. Supreme Court in McDonnell. See McDonnell, 136 S.Ct. at 2368. Additionally, in the case at bar, Grace challenged his conviction on Count 13, arguing that the Court's instruction on the term official action was overbroad. Although he did not object on the basis that the McDonnell Court later relied upon, Grace's argument was close enough to demonstrate that such a basis was reasonably available to counsel on direct review. For these reasons, Grace has failed to show cause for his failure to raise this issue on appeal as to Count 8.

Grace has also failed to demonstrate actual innocence. To demonstrate actual innocence, a defendant must show that "it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623, (1998). Here, the conduct alleged in the Indictment related to accepting bribes in exchange for zoning assistance and the sale of city property. Specifically, the Indictment alleges that Grace promised to ensure that particular property was zoned commercial and to ensure that certain city property was sold to William Myles. Such conduct clearly qualifies as official acts as defined in McDonnell. After review of the record, the Court has determined that enough evidence of such conduct was presented to prevent the Court from concluding that it is more likely than not that no reasonable juror would have convicted Grace under this statute. Therefore, Grace has also failed to show actual innocence. As such, Count 8 should not be vacated.

### iii. Counts 9 and 11

Although it appears from case law that McDonnell does, in fact, apply to Counts 9 and 11, Grace did not raise the issues addressed by McDonnell on direct review for these counts. Therefore, Grace's McDonnell claims on these counts are also procedurally defaulted. Furthermore, because Grace has failed to prove cause or actual innocence,

Grace is not entitled to relief from his convictions on these counts. First, Grace has failed to show cause for the same reasons addressed in the section II(a)(ii) on Count 8. Second, Grace has failed to prove actual innocence, as there was sufficient evidence for a jury to convict him on a theory of property fraud, which does not implicate the term official act. Thus, it is not affected by McDonnell.

Count 9 charged Grace with mail fraud under Title 18, United States Code, Sections 1341 and 1346. Count 11 charged Grace with wire fraud under Title 18, United States Code, Sections 1343 and 1346. Both wire and mail fraud contain an honest services fraud theory and a property fraud theory. Charges may be pursued on either, or both. In this case, charges were pursued on both theories, as both theories were included in the Court's jury instructions for Count 9 and Count 11.

As is mentioned above, only the honest services fraud theory of mail and wire fraud implicates McDonnell, as the official act instruction is only applicable to this theory. Here, the jury had the option to convict under either theory on each Count. Although it is impossible for the Court to determine which theory the jury relied upon, this information is irrelevant for our purposes.

For a defendant to be convicted of mail fraud, the Government must prove that: (1) the defendant knowingly created a scheme to defraud another; (2) the defendant used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendant acted with a specific intent to defraud. For purposes of a property fraud theory of mail fraud, a scheme to defraud includes any scheme to "deprive another of money or property." 18 U.S.C. § 1341. For a defendant to be convicted on a property fraud theory of wire fraud, the Government must prove that: (1) the defendant knowingly created a scheme to defraud; (2) the defendant acted with a specific intent to

defraud; (3) the defendant caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and (4) the scheme to defraud employed false material representations. Again, for purposes of the property fraud theory of wire fraud, a scheme to defraud includes any scheme to "deprive another of money or property."

The question before the Court is whether Grace is actually innocent – that is, whether it is more likely than not that no reasonable juror could find Grace guilty on Counts 9 and 11. The Fifth Circuit has answered this question. Grace appealed his convictions on Counts 9 and 11, arguing that there was insufficient evidence to sustain the convictions. In its opinion, the court expressly held that the "jury was entitled to find from the evidence that Grace knew the letters he wrote contained false representations, and that Grace's objective was to persuade investors and the EPA to give *money* based in part on those lies." United States v. Grace, 568 Fed.Appx. 344 (5th Cir. 2014). The court further concluded that "the evidence of Grace's knowledge of the scheme and the role his Letters played in furthering the scheme was sufficient for the jury to find that Grace acted with the specific intent required for Counts 9 and 11." Id. Given the Fifth Circuit's conclusions, the jury was, in fact, entitled to find Grace guilty on a property fraud theory under both statutes. As such, this Court cannot conclude that it is more likely than not that no reasonable juror could find Grace guilty on those counts. Thus, Grace has failed to show actual innocence.

### iv.  Count 13

Count 13 charged Grace with a violation of 18 U.S.C. 1952, which makes it a crime for anyone to use a facility in interstate commerce with intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on

of certain unlawful activities and thereafter perform or attempt to perform an act to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of such unlawful activity. The unlawful activity Grace was accused of carrying out was bribery in violation of Title 14, Louisiana Revised Statutes, Section 118. <u>See</u> Record Document 218 at 32. Ultimately, Grace was found guilty on this count.

In its opposition to the instant motion, the Government concedes that Count 13 should be vacated. However, the Government's concession was based on the assumption that <u>McDonnell</u> affected Louisiana's bribery statute. <u>See</u> Record Document 363-1 at 29 n.5. This assumption is based solely on the Louisiana Supreme Court's decision in <u>State of Louisiana v. Smith</u>, 212 So.2d 410 (La. 1968). After reviewing <u>Smith</u>, the Court finds no reason to conclude that 14 La. R.S. § 118 should be interpreted in accordance with <u>McDonnell</u>.

It is true that the court in <u>Smith</u> stated that there was no significant difference between the federal bribery statue and the Louisiana bribery statute. However, <u>Smith</u> was decided over forty years before <u>McDonnell</u>, which significantly narrowed the scope of the federal bribery statute's application. Additionally, nowhere in the opinion did the Louisiana Supreme Court suggest that it would interpret the Louisiana bribery statute in direct accordance with the United States Supreme Court's interpretation of the federal bribery statute. Louisiana is a separate sovereign with its own laws and the Louisiana Supreme Court has the final say on the interpretation of those laws. This Court has seen no indication that the Louisiana Supreme Court has, or will, draw a narrow interpretation

regarding the types of acts for which a public official can be convicted under 14 La. R.S. § 118.[3] For these reasons, the Court declines to vacate Grace's conviction on Count 13.

### b. **Alleyne** and **Apprendi** Claims

Grace argues next that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), were violated at trial. <u>See</u> Record Document 344-1 at 6 & 44. These two cases stand for the rule that where a fact increases the statutorily imposed minimum or maximum penalty, the fact must be submitted to the jury and proved beyond a reasonable doubt. <u>See</u> <u>Apprendi</u> 530 U.S. at 490; <u>see also</u> <u>Alleyne</u> 13 S.Ct. at 2155. Here, there were no statutory maximum or minimum penalties applicable to any of the counts on which Grace was convicted. Therefore, this claim is without merit and should be dismissed as frivolous.

### c. Juror Misconduct Claim

Grace also argues that the Court should have declared a mistrial based on juror misconduct. Specifically, he argues that the jury foreman reached out to an outside party during jury deliberations to discuss the case. <u>See</u> Record Document 344-1 at 26 – 27. The Court immediately held a hearing on the juror misconduct issue and ultimately found no grounds for a mistrial. <u>See</u> Record Document 282. Grace did not challenge the Court's decision or raise the juror misconduct issue on direct review. As such, this claim is procedurally defaulted. Furthermore, Grace has failed to put forward any argument as to cause or actual innocence. Therefore, this claim should also be dismissed.

Grace further argues that his right to confrontation under the Sixth Amendment was violated by the failure to call the outside party whom the juror reached out to as a

---

[3]It should also be noted that the jury in this case was not instructed on the term official act in the section of the jury instructions addressing Count 13.

witness at the hearing. As the Government points out, the right being invoked by Grace would more accurately be characterized as the right to compulsory process. Again, however, Grace did not challenge this issue on direct review and has failed to show cause or actual innocence. Therefore, Grace is barred from raising this claim by procedural default. However, even if this claim was not procedurally defaulted, it is without merit. Grace was not prevented from calling the outside party to testify at the hearing. The witness was simply not called by either party. Therefore, no violations of Grace's right to confrontation or right to compulsory process occurred. For all these reasons, this claim should also be dismissed.

### d. __Brady__ Claim

Under __Brady v. Maryland__, 373 U.S. 83 (1963), the Government is required to produce exculpatory evidence. Grace argues that the Government violated __Brady__ by suppressing such evidence. __See__ Record Document 344-1 at 51 – 54. After review, the Court concludes that this claim is without merit and should be dismissed.

A lunch meeting between Grace and several others, including Myles and Nelson, took place on June 9, 2010. This meeting was audio recorded by Myles and Nelson. The recording captured by Myles was introduced at trial. The Nelson recording was not. Grace argues that the Nelson recording was suppressed by the Government because it contained evidence favorable to Grace. Specifically, he argues that the Nelson recording shows that Grace was advised by Myles that the cost of the Cifer 5000 system would be $13.00 per household. __See__ Record Document 344-1 at 53. Grace attached the transcripts of the Myles audio recording and the Nelson audio recording to the instant motion. __See__ Record Documents 344-9, 344-10, 344-11, & 344-12. The Court has reviewed these transcripts and finds that there is no significant difference, if any. More importantly, the

piece of evidence that Grace claims was suppressed in the Nelson audio recording, i.e., the $13 price of the Cifer 5000 system, was actually introduced at trial. See Record Documents 275-3 at 184, 275-5 at 113, and 275 at 73. For these reasons, this claim should also be dismissed.

### e. Blanket Fifth Amendment Privilege Claim

Grace argues next that the Court erroneously allowed a witness to refuse to testify. Specifically, he argues that McCallister was allowed to assert a blanket Fifth Amendment privilege. See Record Document 344-1 at 54-55; see also Record Document 348 at 20-22. A witness may not make a blanket assertion of the Fifth Amendment privilege without inquiry by the Court. See United States v. Goodwin, 625 F.2d 693 (5th Cir. 1980). Instead, "[t]he trial judge must make a proper inquiry into the legitimacy and scope of the witness' assertion of his Fifth Amendment privilege." Id. Here, proper inquiry was made before allowing McCallister to assert the privilege and refuse to testify. McAllister was questioned outside the presence of the jury and allowed to assert the Fifth Amendment privilege to each question. See Record Document 278 at 63-73.

The Court then allowed McAllister's counsel to explain the risk of incrimination that McAllister was protecting against by invoking his Fifth Amendment Privilege. See Record Document 278-1 at 2-4. After hearing from McAllister's counsel and conducting its own research, the Court determined that McAllister's Fifth Amendment privilege outweighed Grace's right of confrontation under the Sixth Amendment. It is also notable that Grace's trial counsel agreed that McAllister should be allowed to invoke the Fifth Amendment and refuse to testify regarding the issues on which he was questioned. See Record Document 278-1 at 3-4. The Court conducted a proper inquiry into the legitimacy and scope of

McAllister's assertion of his Fifth Amendment privilege. For these reasons, this claim is also rejected.

### f. **Napue** Claim

In Napue v. Illinois, 360 U.S. 264 (1959), the United States Supreme Court held that a "conviction obtained through the use of false evidence, known to be such by representatives of the State, is a denial of due process." There are three elements of a Napue claim: (1) the statements in question are actually false; (2) the prosecution knew that they were false; and (3) the statements were material. See United States v. O'Keefe, 128 F.3d 885 (5th Cir. 1997). Here, Grace has failed to demonstrate a Napue violation.

Grace argues that the Government knowingly presented false testimony. Specifically, he argues that William Myles testified falsely that he owned the Skirvin Hotel in Oklahoma City and that the prosecution knew that the testimony was false. See Record Document 349 at 2. First, the Court has no reason to believe that Myles's testimony was false. His testimony was corroborated at trial by an FBI agent who verified his ownership of the Skirvin Hotel. See Record Document 274-3 at 36 & 94. Counsel for the Government has also brought the Court's attention to an Associated Press report published by the Tulsa World, which verifies that Myles purchased the hotel. See "Skirvin's New Owner Seeks Owner," Tulsa World, Nov. 13, 1997 http://www.tulsaworld.com/news/skirvin-s-new-owner-seeks-owner/article_e0e098e8-1be2-5022-ae4d-e0054fd5214b.html. Additionally, the testimony complained of by Grace was elicited on cross-examination by Grace's counsel. As such, it is not material, and thus the third element of Napue is not met. See United States v. O'Keefe, 128 F.3d 885 (5th Cir. 1997) ("When the defense elicits the alleged perjury on cross-examination, no material falsehood has occurred

because the government has not itself knowingly presented false testimony."). For these reasons, this claim should also be dismissed.

### g. Presence at Impeachment Hearing Claim

A criminal defendant's right to be present at trial is protected by the Constitution and the Federal Rules of Criminal Procedure. The Due Process Clause entitles a criminal defendant to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." United States v. Gagnon, 470 U.S. 522 (1985). Additionally, Rule 43 of the Federal Rules of Criminal Procedure requires that a defendant be present at every trial stage. However, there is an exception for hearings on questions of law. See Fed. R. Crim. Pro. 43(b)(3). A defendant may waive his right to be present under the Due Process Clause and the Federal Rules. See United States v. Davis, 61 F.3d 291 (5th Cir. 1995); see also Fed R. Crim. Pro. 43(c).

Here, Grace argues that he was denied his right to be present during all phases of the trial. Particularly, he argues that he should have been present at the hearing regarding "whether the Court was going to allow McAllister to testify in Mayor Grace's trial proceedings." Record Document 348 at 20. While it is true that Grace was not present at this hearing, there was no violation of his Due Process rights or of the requirements of the Federal Rules of Criminal Procedure.

First and foremost, Grace's presence at the hearing was not necessary. The Due Process Clause guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998) (quoting Kentucky v. Stincer, 482 U.S. 730 (1987). Additionally, the "presence of a defendant is a

condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (quoting United States v. Gagnon, 470 U.S. 522 (1985). Here, the sole issue to be decided at the hearing was whether McAllister could legally assert the Fifth Amendment privilege. Grace's presence would not have contributed to the fairness of this procedure and his absence did not thwart the fairness of the proceeding. Thus, Grace was not deprived of his constitutional right. Nor were the Federal Rules of Criminal Procedure violated by proceeding, as this was a hearing on a legal question. Additionally, this claim is procedurally defaulted, as Grace did not raise this issue on direct review. Grace has also failed to show cause or actual innocence. For these reasons, this claim is also rejected.

It should be noted that Grace was also absent from a hearing regarding a motion to allow the impeachment of McAllister on February 28, 2012. See Record Document 281-2 at 2. For the same reasons stated above, Grace's absence did not amount to a violation of his Due Process Rights or a violation of Rule 43. This hearing dealt solely with a legal issue and Grace's presence would not have contributed to the fairness of the procedure. Additionally, it is clear from the record that Grace voluntarily waived any right he may have had to be present through his counsel. See id.

### h. Ineffective Assistance of Counsel Claims

Grace has raised a number of ineffective assistance of counsel claims. Each will be addressed below. To prevail on each claim, Grace must show: (1) that his trial counsel rendered deficient performance, and (2) that the deficient performance resulted in actual prejudice. See King v. Davis, 883 F.3d 577 (5th Cir. 2018) (citing Rhoades v. Davis, 852 F.3d 422 (5th Cir. 2017)).

To satisfy the first prong, "the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, 'counsel's representation fell below an objective standard of reasonableness' as measured by 'prevailing professional norms.'" Rhoades, 852 F.3d at 431–32 (quoting Strickland v. Washington, 466 U.S. at 687 (1984)). We must apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86 (2011) (quoting Strickland, 466 U.S. at 689). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotations omitted).

To satisfy the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." King, 883 F.3d at 586 (quoting Strickland, 466 U.S. at 694).

### i. Change of Venue

Here, counsel for Grace filed a motion to change venue at the outset of trial based on pre-trial publicity. This motion was denied by the Court without prejudice to the defendant's right to re-urge the motion after voir dire. See Record Document 125 at 3. Grace argues that counsel should have objected to the Court's denial of the motion to change venue. He further argues that appellate counsel should have raised the denial of the motion on appeal. Here, the Court notes that either would have been a futile effort.

In United States v. Williams, the Fifth Circuit upheld a district court's denial of a motion to change venue that was "conditioned on the ability of voir dire examination to produce a fair and impartial jury." 523 F.2d 1203 (5th Cir. 1975). In so doing, the Court noted that "[h]olding a final decision on the motion in abeyance pending the conclusion of voir dire is clearly the preferable procedure." Id. at 1208. Here, the process used was similar. The Court denied the motion without prejudice to Grace's ability to re-urge the motion after voir dire. See Record Document 125 at 3. The Court then engaged in a meticulous jury selection process, including voir dire on pre-trial publicity, notwithstanding Grace's argument that the Court "rejected the voir dire request." Record Document 344-1 at 25. Importantly, the motion for change of venue was not re-urged at the close of voir dire.

For these reasons, even if Grace's trial and appellate counsel rendered deficient performance by failing to take issue with the Court's denial, Grace has failed to show that there is a reasonable probability that, but for counsel's inaction, the result of the proceeding would have been different. See United States v. Lipscomb, 299 F.3d 303, 344 (5th Cir. 2002) ("even if inflammatory pretrial publicity did saturate the community, raising a presumption of prejudice to the defendant, the government can usually rebut this presumption through voir dire that ferrets out such prejudice.").

### ii. Juror Misconduct

Grace's next argument relates the juror misconduct issue discussed above. See supra at 11-12. Grace argues that both trial and appellate counsel were ineffective due to their failures to address the juror misconduct issue appropriately. Specifically, Grace argues that trial counsel should have called the outside party whom the juror reached out to as a witness at the hearing on alleged juror misconduct and should have sought a

mistrial based on this issue. He also argues that trial counsel should have called the law enforcement officers who interviewed the outside party. Finally, he argues that his appellate counsel should have raised this issue on appeal.

The decision of a defense attorney not to call a witness "is presumed to have been the result of strategic choice." Trottie v. Stephens, 720 F.3d 231 (5th Cir. 2013). Here, it is clear from the record that one of the jury misconduct concerns was whether a particular juror was contacting her minister and receiving instruction from the minister that she should not sit in judgment of Grace. See Record Document 282 at 4. If this information was true, it would have been in Grace's best interest for this juror to remain on the jury. Given this possibility, it may have been unwise for defense counsel to call additional witnesses at the hearing on misconduct, as they may have offered testimony that would have led to the removal of the juror at issue. For the same reasons, it may have been unwise to request a mistrial. Given these circumstances, Grace has failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689 (1984).

As to the ineffective assistance claim against Grace's appellate counsel, Grace has failed to point the Court towards any directly controlling precedent that would have mandated reversal on appeal. Thus, Grace has failed to demonstrate deficient performance on the part of his appellate counsel. See United States v. Williamson, 183 F.3d 458, 463 (5th Cir. 1999) ("Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the [appellate] court's attention."). For these reasons, Grace's ineffective assistance claim regarding the juror misconduct issue should be dismissed.

### iii.  Entrapment Defense

Grace argues that his trial counsel failed to investigate or argue the defense of entrapment. <u>See</u> Record Document 344-1 at 29-35. Specifically, he complains that his trial counsel failed to review the trial transcripts from the trials of other defendants that preceded Grace's. He points directly to testimony offered by William Myles at the trial of Mayor Nelson, wherein Myles testified that he did not know what, if any, criminal activities Grace had engaged in at the time he began working on the Grace investigation. He argues that his trial counsel was ineffective because they did not base an entrapment defense on this testimony. Grace's arguments are without merit.

First, Grace's counsel did, in fact, obtain a transcript of Myles's testimony from the previous trial. In fact, portions of the transcript were even attached to a supplemental motion for discovery filed by Grace's counsel prior to trial. <u>See</u> Record Document 115. Second, Myles testified to the same effect at Grace's trial. Third, and most importantly, Grace's counsel did, in fact, rely on such testimony in seeking an entrapment defense. <u>See</u> Record Document 281-2 at 202 ("And so when Myles said, 'When I went there on March 25, we were not investigating a crime,' I think it warrants the entrapment charge to go to the jury."). Based on all the evidence before it, the Court determined that defense counsel had not made a *prima facie* showing of entrapment, and that an instruction on the same was not warranted. <u>See</u> Record Document 281-2 at 203. For these reasons, Grace has failed to show deficient performance, and thus his ineffective assistance claim regarding the entrapment issue should be dismissed.

### iv.  Conflict of Interest

Grace argues that his two attorneys were experiencing a firm "break up" and were estranged, and that as a result, they failed to "place the government's case through a

meaningful adversarial testing." Record Document 344-1 at 36. This argument is also without merit.

First, Grace has failed to offer any proof of the alleged estrangement between his attorneys. Second, the Supreme Court has explained that to succeed on a conflict of interest claim, a petitioner must establish that "'his counsel *actively represented* conflicting interests,'" and that this conflict "adversely affected his counsel's performance." Mickens v. Taylor, 535 U.S. 162 (2002). Here the asserted conflict does not involve Grace's counsel's "active representation" of "conflicting interests"—Grace makes no claim that his attorneys *represented* individuals with conflicting interests. Rather, this is a case in which Grace's two attorneys allegedly had an independent and unrelated conflict between themselves. Therefore, even if Grace's attorneys were estranged, Grace has failed to show that either of his attorneys actively represented conflicting interests under the Sixth Amendment. Thus, this claim should be dismissed.

### v. William Myles

Grace argues that his attorneys were ineffective for failing to investigate witness William Myles. Specifically, he argues that counsel failed to discover his history of dishonest behavior and the fact that he accepted benefits from the FBI in exchange for his participation as an informant. See Record Document 344-1 at 40-42. He further argues that they failed to discover that Myles was not the owner of the Skirvin Hotel in Oklahoma City as he testified at trial. See id.

First, Grace offers no support for any of his contentions regarding Myles's dishonest behavior prior to his participation as an informant for the FBI and his testimony at trial. Second, Myles was cross-examined at length about the benefits he received from the FBI for his efforts. Thus, it is obvious that Grace's counsel did, in fact, know about the

agreement. Third, as has been discussed above, an investigation into Myles's ownership of the Skirvin Hotel would establish that he did, in fact, own the hotel. For these reasons, Grace has failed to establish deficient performance by his attorneys. Additionally, even if Grace could establish deficient performance, he has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, this claim should be dismissed.

### vi. Luis Gonzalez Real Estate Venture

Grace also argues that his counsel failed to investigate the Luis Gonzalez real estate scheme. Particularly, Grace argues that his counsel should have discovered and offered evidence that neither Grace nor the city of St. Gabriel owned the land in question. However, it is clear from the record that it was undisputed at trial that the land in question was owned by a subsidiary of Apex Oil and therefore was not owned by either Grace or the City of St. Gabriel. See Record Document 274-1 at 134-151.

Grace also argues that his counsel should have discovered and offered evidence that G3 Housing 1, LLC, was a small company that never received "multiple contracts and millions of dollars in contracts." However, it is also clear from the record that Gonzalez himself testified to this effect at trial. See Record Document 274-2 at 15-16, 102, 132, & 138. Therefore, even assuming, arguendo, that counsel's performance was deficient, Grace cannot prove prejudice on these issues and this claim should be denied.

### vii. Sentencing

Grace argues that his trial counsel was ineffective for failing to object at sentencing to a number of guideline calculations that he now claims were erroneous under McDonnell. However, Grace has clearly failed to demonstrate deficient performance. McDonnell had not been decided at the time of Grace's re-sentencing and there is no

duty on the part of defense counsel to anticipate changes in the law or the specific argument/analysis set forth in <u>McDonnell</u>. <u>See</u> <u>United States v. Fields</u>, 565 F.3d 290 (5th Cir. 2009). Therefore, Grace has failed to prove that "in light of the circumstances as they appeared at the time of the conduct, 'counsel's representation fell below an objective standard of reasonableness' as measured by 'prevailing professional norms.'" <u>Rhoades v. Davis</u>, 852 F.3d 422 (5th Cir. 2017).[4] He has thus failed to show deficient performance and this claim should be rejected.

### viii.  Failure to Raise <u>McDonnell</u> on Appeal

Grace argues in several areas of his brief that his appellate counsel was ineffective for failing to raise <u>McDonnell</u> on appeal. However, as is noted above, <u>McDonnell</u> was decided after Grace's judgment became final. Counsel does not need to "raise every nonfrivolous ground of appeal available." <u>United States v. Williamson</u>, 183 F.3d 458 (5th Cir. 1999). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." <u>Id.</u> Here, there was no directly controlling precedent on the issue as <u>McDonnell</u> was decided after Grace's appeal.  As previously noted in section II(a)(ii), Grace's appellate counsel did, in fact, challenge the conviction on Count 13, arguing that the Court's instruction on the term official act was overbroad.  While this appellate argument was not based on the argument/analysis advanced in <u>McDonnell</u>, it evidences that appellate counsel's performance was not ineffective.  Grace simply cannot prove deficient performance.  Additionally, as the Court has already addressed, <u>McDonnell</u> does not affect any of the Counts on which Grace was

---

[4]Additionally, it should also be noted that <u>McDonnell</u> would have had no effect on the guideline calculations given the Court's conclusion that <u>McDonnell</u> has not affected any of the counts on which Grace was convicted. As such, Grace has also failed to prove prejudice.

convicted. Thus, Grace also cannot prove prejudice. As such, this claim should also be dismissed.

## CONCLUSION

For the reasons set forth above, Grace has failed to show sufficient grounds to warrant relief from his sentence under Section 2255.

Accordingly,

**IT IS ORDERED** that Grace's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Record Document 344) ) and his Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 348) be and are hereby **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Judge or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of August, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT